**Juan PEREZ BUSTILLO, et al., Appellants,**

v.

**The STATE of Louisiana, et al., Appellees.**

No. 13–86–139–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 2, 1986.

Benjamin Sley, Corpus Christi, for appellants.

J.A. Canales, Canales & Associates, Corpus Christi, for appellees.

Before NYE, C.J., and SEERDEN and KENNEDY, JJ.

## OPINION

KENNEDY, Justice.

This is an appeal from a trial court order sustaining appellees' special appearance and dismissing appellants' case for lack of jurisdiction. We affirm.

Appellants are Texas residents who were injured in an automobile accident which they claim was caused by the negligence of Glen Howlett, a juvenile escapee from a Louisiana detention facility. Appellants' petition alleged that Howlett was driving the wrong way on the Corpus Christi Harbor Bridge when the accident occurred. Howlett died of injuries sustained in the accident. Appellants sued the State of Louisiana, the Louisiana Department of Public Safety and Corrections, the Louisiana Training Institute-Bridge City and B.G. Harris, the superintendent of the Louisiana Training Institute-Bridge City, claiming that they had negligently violated their duties to supervise and control Howlett to prevent his escape. Appellants alleged that Howlett had previously escaped from custody and fled Louisiana. The trial court found that it had no jurisdiction over appellees and dismissed appellants' case.

Appellants raise two points of error on appeal. They assert that appellees may not claim sovereign immunity. They also argue that the minimum contacts requirement for jurisdiction has been met. They further claim that appellees waived their special appearance motion. In their second point of error, appellants contend that the trial court erred in setting aside an interlocutory default judgment which it had previously entered in the case.

Because appellees are not residents of the State of Texas, we look first to see whether the laws of Texas provide for jurisdiction over them under the circumstances of the particular case. *Texas Commerce Bank v. Interpol '80 Ltd.*, 703 S.W.2d 765, 768 (Tex.App.—Corpus Christi 1985, no writ). The statutory provisions upon which jurisdiction may be based are TEX.CIV.PRAC. & REMS.CODE §§ 17.041 and 17.042(2), which provide that a nonresident does business in this state if a nonresident commits a tort in whole or in part in this state.

If state law provides jurisdiction, we then must decide whether an exercise of jurisdiction would comport with due process requirements of the fourteenth amendment to the United States Constitution. *Atwood Hatcheries v. Heisdorf & Nelson Farms*, 357 F.2d 847, 852 (5th Cir. 1966); *Texas Commerce Bank*, 703 S.W.2d at 768. A state may exercise *in personam* jurisdiction over an out of state defendant only if the defendant has sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which defendant has incurred there. *International Shoe Co. v. Washington*, 326 U.S. 310, 322, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). We look to the reasonableness and fairness of demanding that an out-of-state defendant litigate in a distant forum, as well as to the presence of sufficient affiliating circumstances to empower the forum state to assert jurisdiction over a nonresident defendant. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

In determining the constitutional requisites of a state's jurisdiction over nonresidents who maintain only a single or few contacts with Texas, we apply the following test: 1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; 2) the cause of action must arise from or be connected with such act or transaction; and 3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice. *Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d 434, 436 (Tex.1982); *Texas Commerce Bank v. Interpol '80 Ltd.*, 703 S.W.2d 765 (Tex.App.—Corpus Christi 1985, no writ). The constitutional touchstone remains whether the nonresident defendant has purposefully established minimum contacts in the forum State. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Texas Commerce Bank v. Interpol '80 Ltd.*, 703 S.W.2d at 772. The nonresident's conduct and connection with the forum state should be such that the nonresident should reasonably anticipate being haled into court in the forum state. *Burger King Corp. v. Rudzewicz*, 105 S.Ct. at 2183. The purposeful availment requirement ensures that a defendant will not be haled into court under attenuated and random circumstances or as a result of the unilateral activity of another who claims some relationship with the nonresident defendant. *Burger King Corp.*, 105 S.Ct. at 2183.

A nonresident defendant has the burden to negate all bases of personal jurisdiction. *Siskind v. Villa Foundation, Inc.*, 642 S.W.2d at 438; *Texas Commerce Bank*, 703 S.W.2d at 770. The following evidence was introduced at the special appearance hearing. Jay Marvin Montgomery, an assistant Attorney General for the State of Louisiana, testified that appellees, Louisiana Department of Public Safety and Corrections and Louisiana Training Institute-Bridge City, are both alter-egos of the State of Louisiana. He testified that an identical lawsuit has been filed in a Louisiana district court. Montgomery said that neither the Department of Public Safety and Corrections nor the Louisiana Training Institute have any employees in Texas. He testified that they do not perform any activities in the State of Texas or have any offices, institutions or prisoners in Texas. On cross examination, he testified that Louisiana is a signatory on the Interstate

Parole Commission and has reciprocity with Texas. He also said that Louisiana engages in extradition proceedings with Texas from time to time.

■ Donald E. Wydra, assistant secretary for the Office of Juvenile Services for the Louisiana Department of Public Safety and Corrections, testified that all of the Louisiana Training Institutes are located in the State of Louisiana. There are no offices, employees, or training institutes outside the state. He said that Glen Howlett's foster parents live in Louisiana. He testified, on cross examination, that Glen Howlett had escaped previously from the Louisiana Training Institute.

Appellee Benny G. Harris, of the Louisiana Training Institute-Bridge City, testified that no part of the Louisiana Training Institute is in Texas, no employees from the training institute are in Texas, and the training institute performs no activities in Texas.

The evidence presented at the hearing shows that appellees did not purposefully conduct any activities within the State of Texas. Any tortious acts on their part were not such that they could reasonably anticipate being forced to defend a negligence suit in Texas. *See Adden v. Middlebrooks,* 688 F.2d 1147 (7th Cir.1982). We do not believe that appellees could reasonably forsee being haled into court in Texas under these circumstances. An escaped prisoner might likely commit a tortious act in any state to which he might flee. We do not believe that, merely because Texas and Louisiana have common borders and reciprocal parole and extradition agreements, a nexus exists between these contacts and the tort allegedly committed by Howlett in this case. Appellees have shown that no minimum contacts exist between them and the forum state.

■ Appellants also argue by their first point of error that appellees waived their special appearance. TEX.R.CIV.P. 120a provides:

1. [A] special appearance may be made by any party either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State. A special appearance may be made as to an entire proceeding or as to any severable claim involved therein. Such special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion; provided however, that a motion to transfer venue and any other plea, pleading, or motion may be contained in the same instrument or filed subsequent thereto without waiver of such special appearance; and may be amended to cure defects. The issuance of process for witnesses, the taking of depositions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance. Every appearance, prior to judgment, not in compliance with this rule is a general appearance.

2. Any motion to challenge the jurisdiction provided for herein shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard. No determination of any issue of fact in connection with the objection to jurisdiction is a determination of the merits of the case or any aspect thereof.

3. If the court sustains the objection to jurisdiction, an appropriate order shall be entered. If the objection to jurisdiction is overruled, the objecting party may thereafter appear generally for any purpose. Any such special appearance or such general appearance shall not be deemed a waiver of the objection to jurisdiction when the objecting party or subject matter is not amenable to process issued by the courts of this State.

In this case, the only defensive pleading on file was appellees' special appearance motion. Appellees did not appear in court prior to the special appearance hearing. Appellants argue that prior to their special appearance, counsel for appellees informal-

ly approached the trial court with an order setting aside the default judgment. However, there is nothing in the record to show that appellees made a formal appearance prior to the jurisdiction hearing. The trial court's order setting aside the default is designated *sua sponte*. Appellants did not waive their special appearance.

Our holding that sufficient minimum contacts do not exist to allow appellants to pursue their cause in Texas precludes the necessity of addressing appellants' argument that Louisiana's sovereign immunity does not apply in Texas. Appellants' first point of error is overruled.

■ By appellants' second point, they argue that the trial court erred in setting aside an interlocutory default judgment. The record reflects that an interlocutory default judgment was signed by the trial court on September 3, 1985 at 8:18 a.m. Appellees' special appearance was file-marked on September 3, 1985, at 9:30 a.m. The trial court signed an order entitled *Sua Sponte* Order Setting Aside Interlocutory Judgment on September 20, 1985, which set aside the prior order. The order states that the default judgment was entered prematurely and is void.

TEX.R.CIV.P. 329b(d) provides that a trial court has plenary power to grant a new trial or to vacate, modify, correct, or reform a judgment within thirty days after the judgment is signed. The order setting aside the Interlocutory Default Judgment was signed during the period of time in which the trial court could properly exercise its plenary power. We hold that the trial court had the authority to so act. Appellants' second point of error is overruled.

The judgment of the trial court is AFFIRMED.