**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF BEAVER OKLAHOMA, Appellant,**

v.

**AMARILLO HOSPITAL DISTRICT, Appellee.**

**No. 07–91–0231–CV.**

Court of Appeals of Texas,
Amarillo.

June 4, 1992.

Rehearing Denied July 7, 1992.

118

Gene E. Steed, Perryton, for appellant.

Sanders, Baker & Jesko, John B. Board, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

BOYD, Justice.

Appellant Board of County Commissioners of the County of Beaver Oklahoma (County), brings this appeal from a judgment in favor of appellee Amarillo Hospital District (Hospital). The judgment arises from a suit the Hospital brought against the County seeking recovery for the treatment of Linda K. Hall on the basis of an

implied contract with the Hospital. Although the County complains of error committed by the trial court in sixteen points of error, for reasons hereinafter articulated, we reform the judgment, and as reformed, affirm the judgment of the trial court. The points of error will be addressed in the order that logical continuity requires.

■ In its first point, the County contends the trial court had no jurisdiction over it since it is an Oklahoma political subdivision. It is established that a Texas court may exercise jurisdiction over a nonresident if two conditions are met. First, the Texas long-arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with federal and state guarantees of due process. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 17.041–17.069 (Vernon 1986). Section 17.042(1) authorizes the exercise of jurisdiction over a nonresident who "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." The Hospital's allegations are sufficient to satisfy the requisites of the long-arm statute. However, the Texas long-arm statute is limited by federal constitutional limitations of due process. *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). For a Texas court to exercise jurisdiction over a nonresident in a manner consistent with federal constitutional guarantees of due process, three requirements must be met:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state [Texas];

(2) The cause of action must arise from, or be connected with, such act or transaction. Even if the cause of action does not arise from a specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic;

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Schlobohm v. Schapiro,* 784 S.W.2d 355, 356–58 (Tex.1990).

The constitutional touchstone remains whether the nonresident defendant has purposefully established minimum contacts in the forum state such that it could reasonably anticipate being haled into court in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The purposeful availment requirement ensures that a defendant will not be brought into court under attenuated and random circumstances or as a result of the unilateral activity of another who claims some relationship with the nonresident defendant. *Id.*

In contending that no such purposeful availment on its part exists here, the County contends the facts in this case are analogous to those existent before the court in *Perez Bustillo v. State,* 718 S.W.2d 844 (Tex.App.—Corpus Christi 1986, no writ), in which that court found a lack of such purposeful availment. We disagree.

In the *Perez Bustillo* case, a juvenile escaped from a Louisiana detention facility and was later involved in an automobile accident in Texas. The Texas residents who were injured in the accident sued the State of Louisiana and others, alleging that the defendants had negligently violated their duties to supervise and control the juvenile to prevent his escape. *Id.*

In reaching its conclusion, the *Perez Bustillo* court noted, "An escaped prisoner might likely commit a tortious act in any state to which he might flee," and concluded that simply because Texas and Louisiana had common borders and reciprocal parole and extradition agreements, a sufficient nexus was not shown that Louisiana could reasonably foresee being haled into court in Texas as a result of the alleged tortious acts. *Id.* at 847.

■ In contrast, the Hospital alleged it treated Hall at the request of the County and they impliedly contracted to pay the Hospital for such treatment. Thus, the Hospital pled allegations that the County purposefully conducted an activity in Texas such that the County could reasonably have anticipated being haled into court in Texas in regards to that activity. Thus, unlike the actions of the defendants in *Perez Bustillo*, the County was alleged to have directed its actions toward Texas.

■ The Hospital having made allegations which would support jurisdiction, it was the burden of the County (the nonresident defendant) to prove that all bases of personal jurisdiction were negated. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985); *Electronic Data Systems Corp. v. Hanson*, 792 S.W.2d 506, 507 (Tex.App.—Dallas 1990, no writ). The record reveals that at the hearing on the jurisdiction question, the County presented the affidavit of Charles Huebner, a member of the Board of the County Commissioners of Beaver County, Oklahoma. In that affidavit, Huebner stated, inter alia: (1) no member of the Board of the County Commissioners of Beaver County, Oklahoma authorized or directed the incurring of any hospital bill for Hall at the Hospital, (2) Hall was not sent to Amarillo while a prisoner of the County, nor was she sent to Amarillo for hospital services by anyone authorized to incur any hospital bills on behalf of the County, (3) the County never did "contract" with the Hospital for services of any kind for Hall, (4) the County does not authorize anyone as agent, implied agent or any of the officials of the County to "contract" for hospital services in the State of Texas.

Parenthetically, the Hospital, without specific citation of authority, asserted at the jurisdiction hearing, as well as at oral submission on appeal, that the suit is brought against the Beaver County Board of Commissioners because the statutes of Oklahoma require that procedure. We note that Okla.Stat.Ann. tit. 19, § 4 (West 1988) apparently is the statute that requires such styling of a case and Okla.

Stat.Ann. tit. 19, § 326, 410.8 *et seq.* (West 1988), provides that the Board of County Commissioners has authority over claims against the County. Thus, inasmuch as the Hospital was suing for acts allegedly committed by the County, its agents and employees, we conclude that procedurally, this action is correctly postured.

It was undisputed that Hall had been shot and then handcuffed in Oklahoma by Oklahoma police. In his deposition, the Beaver County Sheriff testified he had called the ambulance which took Hall to Beaver County Memorial Hospital. B.C. Trentham testified in his deposition he is an undersheriff of Beaver County. He further testified he accompanied the ambulance to the hospital.

Huebner testified in his deposition that the Board of County Commissioners pays the claims of the sheriff's department. LaVern Melton, hospital administrator of Beaver County Memorial Hospital, testified in her deposition the governing board of the hospital is the Board of Trustees. She further testified the trustees are appointed by the County Commissioners and the hospital is a county facility.

Hall was transferred from Beaver County Memorial Hospital to Northwest Texas Hospital in Amarillo, Texas. Northwest Texas Hospital was contacted about the transfer by telephone made from the nurse's station at Beaver County Memorial Hospital. Beaver County EMS handled the transfer. At the time of the transfer, the EMS team contacted the sheriff's department and advised them the team. was "Code 3" en route to Northwest Texas Hospital in Amarillo.

Sandra Parker, the wife of a deputy sheriff, testified in her deposition that she accompanied the patient to Northwest Texas Hospital and did so at the request of the sheriff. The sheriff also requested that Parker report to him how the patient was doing. Parker testified she reported twice to the sheriff. The sheriff testified Parker was later deputized in order to pay her and she testified she was compensated by the County.

Although the above recited facts do not constitute all of the evidence presented in support of jurisdiction, it is illustrative of such evidence. Parenthetically, we note the factual question whether the County impliedly contracted with the Hospital is not necessarily encompassed within the jurisdictional question. Jurisdiction is proper if the County purposefully did some act in Texas from which the Hospital's cause of action arose, or if it is legally connected with such an act, and the assumption of jurisdiction does not offend traditional notions of fair play and substantial justice. We find the record sufficiently supports the trial court's action in overruling the County's special appearance. The County's first point of error is overruled.

■ In its second point of error, the County asserts the trial court erred in failing to submit a special issue to the jury as to whether the County had systematic and continuous contacts with the State of Texas, such that would subject it to the jurisdiction of Texas. Initially, we note that systematic and continuous contacts are not necessarily required for Texas to exercise jurisdiction over the County. Even if that type of contact does not exist, jurisdiction is proper if the cause of action arises from, or is connected with, a purposeful act or transaction done or consummated in Texas. *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 356–58 (Tex.1990).

■ Even so, determination of personal jurisdiction is a matter for the court, not the jury. A special appearance to object to a court's exercise of in personam jurisdiction is made pursuant to Tex.R.Civ.P. 120a(3). That rule provides, "The *court* shall determine the special appearance on the basis of...." (emphasis added). *See Ainsworth v. Oil City Brass Works*, 271 S.W.2d 754, 760 (Tex.Civ.App.—Beaumont 1954, no writ) (Jurisdiction is a matter for the determination by the court and not by the jury). That being true, no submission to the jury was required and the County's second point of error is overruled.

In its third point of error, the County asserts, "The trial court erred in granting judgment against the Defendant, BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BEAVER, OKLAHOMA, for the reason that there was no proof by the Plaintiff that at the time the bill and/or so-called implied contract was entered into, that the County of Beaver had on hand monies in the treasury sufficient to pay such bill, all of which violates the Constitution of the State of Texas, Article 11, § 7, which says that prior to the time a county makes and enters into a contract, they must have on hand sufficient monies with which to pay the bill at the time the contract is made and entered into and a similar law in the State of Oklahoma, of which the court took judicial notice and failed and refused to apply."

■ Because both Texas and Oklahoma law are asserted under this point of error, it is necessary to determine which state's substantive law applies. In that connection, in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984), the Court instructs that "[I]n all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." *Id.* at 421. In this implied contract action, it is undisputed there is no such choice of law clause. In making a selection of the applicable law, the choice does not depend upon the quantity of contacts, but rather upon the qualitative nature of those contacts. *Id.*[1]

The thrust of the County's argument is that the alleged implied contract is invalid because it was beyond the County's power to enter into. That argument presents two substantive issues. The first issue is whether there is a relevant limitation upon the contractual authority of the County. The second issue is if the County violated such a limitation, does that violation negate the validity of the alleged implied contract?

1. As noted earlier, Oklahoma law provides the Board of County Commissioners authority over claims against the county. It seems apparent that Oklahoma has the most significant relationship with respect to what entity is responsible for claims against an Oklahoma county.

In determining which state law should be applied in determining the issue as to limitations upon the county's contractual authority, we find that Oklahoma has the most significant relationship and its law should be followed in the determination of that question. This follows, we believe, because Beaver County is a subdivision of the State of Oklahoma and its fiscal and contractual powers flow from that entity.

> Okla. Const. art. X, § 26 provides in part: [N]o county ... shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof,....

In the seminal case of *Hillcrest Medical Center v. State*, 675 P.2d 432 (Okla.1983), the Oklahoma Supreme Court was presented with a contention similar to the one by the County. In that case, a prisoner was injured while being transported in a car owned and operated by a Tulsa County Deputy Sheriff. The hospital which treated the patient sued Tulsa County for payment. The trial court rendered judgment in favor of the hospital, finding that the Tulsa County Sheriff impliedly consented to pay the hospital. *Id.*

The Tulsa County Board of County Commissioners appealed, contending in part that the Hospital's claim exceeded the debt limitation provision found in Okla. Const. art. X, § 26. *Id.* at 434–35. In its discussion of that question, the Court noted that claims based on constitutional governmental functions were excepted from the debt limitation provision. It observed that since the prisoner was in the custody of the sheriff's department, the county had the duty to provide for any immediate medical needs of the prisoner, and held the claim arose from a constitutional governmental function which was not subject to the debt limitation provisions of Article X, § 26. *Id.* at 435–36.

■ In the present case, the jury found in response to question number one that at the time Hall was transferred to Amarillo Hospital District for medical care and treatment she was under the custody of the

County. It is undisputed that at that time she was in need of immediate medical care. Thus, under the above authority, the County had a duty to provide that care. Therefore, the Hospital's claim arose from a constitutional governmental function which was not subject to the debt limitation provisions of Article X, § 26. The County's third point of error is overruled.

■ In its tenth point of error, the County contends the trial court erred in submitting question number one because it was not supported by any pleadings, constituted a comment on the weight of the evidence, and was not in proper form. Initially, we note this point of error embraces more than one specific ground of error and therefore is multifarious. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 823 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). An appellate court may disregard any assignment of error that is multifarious. *Id.* at 824. However, in the interest of a full discussion and disposition of this case, we will address the County's contentions.

■ In question number one, the court inquired whether at the time Hall was transferred to the Hospital for medical care and treatment "she was under the custody of Beaver County, Oklahoma." The County's objection to this question was that it should inquire "whether or not she was an official or employee or prisoner or in custody at the time the bill was incurred; in other words, at the time the bill was incurred, whether or not she was under custody when she was being transferred." Since there was no trial objection on the basis of a lack of pleading or that the issue constituted a comment on the weight of the evidence, neither of those complaints were preserved for appellate review. *First State Bank, Morton v. Chesshir*, 634 S.W.2d 742, 746 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.).

■ In regard to the contention that question one was not in proper form, the County's entire authority and argument is "the County submitted three proper and correct questions for the jury with regard to the custody issue." That argument does

not comply with Tex.R.App. P. 74(f) which requires a "discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." Such a failure has been held to waive the question. *See Cox v. Rice Trust Inc.*, 648 S.W.2d 758, 759 (Tex.App.—Tyler 1983, no writ).

■ Even so, we note that in *Hillcrest*, the Court held that the county had a duty to provide necessary medical treatment for prisoners in their custody. 675 P.2d at 432. The inquiry in question one was whether Hall was under the custody of the County at the time she was transferred to the Hospital for medical care and treatment. As explicated in the *Hillcrest* case, the County had a duty at that time to provide Hall necessary care and the Hospital's claims arose from the care which was provided to Hall. We do not read *Hillcrest* as requiring that the prisoner must have remained in the county's specific custody during the actual treatment. The need for treatment arose during the County's custody of the prisoner giving rise to the duty to provide the treatment, which was subsequently supplied by the Hospital. We do not find the special issue to be improper in form. The County's tenth point of error is overruled.

■ In its twelfth and fourteenth points of error, the County contends the evidence was factually and legally insufficient to support the jury's affirmative answer to question one. In reviewing a "no evidence" question, an appellate court must consider only the evidence and reasonable inferences therefrom that tend to support the jury findings, disregarding all contrary evidence and inferences. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). If there is any evidence of probative force to support the findings of the jury, the point must be overruled. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ In reviewing a factual insufficiency question, an appellate court must consider all of the evidence in the record, including that which is contrary to the judgment. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). The verdict may be set aside only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d at 661. Determination of these points requires a brief review of the pertinent evidence.

■ Sandra Parker, the woman who accompanied Hall to Amarillo, testified that she did not carry a firearm with her, did not place Hall under arrest, had no authority to place Hall under arrest, and Hall was not in her custody. Larry Kitchens was the assistant director of the Beaver County Emergency Medical Services at the time of the incident. He testified that while he did not know whether Hall was placed under arrest, he did not see anyone place her under arrest.

Gary Thornberry was an emergency medical technician at the time of the incident. He testified:

Q: Do you feel like she was in custody after she was shot?

A: I don't know, because I know it's standard procedure to handcuff someone after you have been involved in a violent confrontation with them. This is primarily for safety. A person could get to another weapon or whatever. I don't know if she was placed in custody or not. I don't know if she was under arrest or not. She was restrained.

In support of its proposition, the County also relies upon the following testimony of Ken Hampston, a City of Beaver Policeman:

Q: If she had gone to the hospital and recovered, I assume she wouldn't have just walked away from it?

A: I assume charges would have been filed.

However, the Beaver County Sheriff testified Hall's husband had told him there were some guns on the bus where she was and she "might do something crazy." He also said Hall was a fugitive from Texas. The sheriff instructed his undersheriff to get another officer and try to get the guns off the bus Hall was in. When the Oklahoma officers approached the bus, Hall "met them at the door with a loaded revolv-

er with the hammer back." The officers drew their guns and in the melee Hall was shot in the head.

Thornberry testified Hall was handcuffed and lying in the doorway of the bus when he arrived at the scene of the shooting. He further stated that in his opinion, the handcuffing at that point was not for medical reasons because he "didn't know she had posturing at that time." He felt the handcuffing was for safety reasons.

Thornberry stated his primary occupation at the time of the incident was as a dispatcher with the Sheriff's Department. In response to questions concerning whether Hall was in custody after the shooting, he responded:

Q: Was she under someone's control?

A: Yes, more or less. Yes.

Q: To your knowledge, did she commit a crime?

A: Yes, sir.

Q: What crime was that?

A: Feloniously pointing a firearm.

Q: Did she point that at law enforcement personnel?

A: Yes, sir, with the information that I have heard, that's the way I understand it.

Q: Based on your experience as a law enforcement personnel, that's a very serious crime, is it not?

A: That's grounds for a shooting.

Q: Had she not been shot, are you confident she would have been arrested?

A: Yes, sir.

Q: Is that based on your experience as a law enforcement officer?

A: That and just my experience as a lawman. I feel like if somebody was to point a gun at a police officer, they would probably be arrested.

Other police witnesses testified similarly. For example, Hampston testified further:

Q: Also based on your law enforcement experience, would you consider someone that had been shot, to at that time be under police custody or control?

A: Well, I am sure you would have to assume the responsibility of that person, and that person has violated the law.

Parker testified she rode in the ambulance with Hall at the request of the sheriff. She stated the sheriff wanted her to report Hall's health conditions to him. The sheriff testified that he later deputized her so that she would be paid out of county funds. He stated that Parker was paid by the County to go along with the ambulance. Thornberry testified that after transporting Hall to Northwest Hospital, he "had to get the clothes she was wearing for evidence." Kitchens stated that Parker did not ride in the ambulance to render any medical assistance. He testified that when he asked Parker why she was riding in the ambulance, she answered "[b]ecause this girl was in custody, and she was supposed to accompany us. She said she would stay with her the whole time."

The above mentioned evidence, while not all of the evidence presented at trial, is sufficiently illustrative of that presented at trial. In *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex.Crim.App.1985), the Court explicated:

Generally speaking, custody comes in various and sundry forms. It can result from actual custody in the form of arrest; it can occur if a suspect is physically deprived of his freedom of action in any significant way, such as being placed in a police vehicle and taken to the station house for questioning; it can occur if a person is led to believe, as a reasonable person, that he is deprived of his freedom of movement, such as when a police officer tells him he cannot leave; it can occur if the police create a situation that would warrant a reasonable person in believing that his freedom of movement has been significantly restricted; or it can occur if there is probable cause to arrest and the police do not tell the suspect that he is free to leave. [citations omitted]

After reviewing all of the evidence, we find sufficient evidence of probative force to support the jury's finding that at the time Hall was transferred to the Hospital for medical care and treatment, she was under the custody of the County. Additionally, we do not find the jury's answer to

be so against the great weight and preponderance of the evidence as to be manifestly unjust. The County's twelfth and fourteenth points of error are overruled.

In its fourth point of error, the County contends:

The trial court erred in submitting Question No. 3 to the Jury regarding "implied contract" for the following reasons:

1. It constituted a comment on the weight of the evidence and was not a proper issue and the trial court failed to submit a proper instruction which would have contained the language pertaining to the requirement of mutual intent being required prior to a finding of "implied contract." A proper instruction and a proper issue were tendered to the Court by the Defendant prior to the submission of the charge to the jury.

2. The issue failed to inquire as to the objective manifestations of the parties in question, rather than what may have been their unspoken intentions. A proper instruction was submitted by the Defendant timely.

3. Stipulations and admissions by the Plaintiff proved that Betty Green, mother of Linda K. Hall, made the arrangements to admit Linda K. Hall into Northwest Texas Hospital and that no verbal or written commitments were made by either BEAVER COUNTY or the Sheriff of Beaver County, Oklahoma, to Northwest Texas Hospital, with regard to payment of the hospital bill for goods and services rendered to Linda K. Hall.

Initially, we note that the County's fourth point of error contains multiple grounds of error and as such is multifarious and therefore may be disregarded by this court. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 823–24 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). However, to the extent that the County has presented authority and argument sufficient to support its grounds of error, this court will address the County's contentions.

Question two inquired whether "an implied contract was created between Amarillo Hospital District and Beaver County, Oklahoma, for Amarillo Hospital District to provide medical goods and services to Linda K. Hall?" The County's trial objection to the question was "it does not have the proper definition of implied contract, nor does it have the proper instruction in connection with it." Since no trial objection was made that the question constituted a comment on the weight of the evidence, no challenge on that basis was preserved for appellate review. *First State Bank, Morton v. Chesshir, supra.*

In addition to contending that the instruction accompanying the question should have specifically stated the jury was limited to "the party's objective manifestation of intent," the County contends, "The Special Instruction as given by the trial court only inquires as to the 'intention' of the Amarillo Hospital District.... It fails to inquire as to 'mutual intent'...."

 It is well established that a trial court has wide discretion in determining the proper issues and instructions to be submitted to the jury. *Lawson–Avila Const., Inc. v. Stoutamire,* 791 S.W.2d 584, 592 (Tex.App.—San Antonio 1990, writ denied). In this case, the jury was instructed "that an implied contract exists when (1) one party requests goods or services from a second party ... and (3) the request ... when considered in the light of all surrounding circumstances was such as to cause the second party to reasonably believe that the first party intended to pay for the goods or services." We find the instruction was sufficient and the trial court did not abuse its discretion in its submission.

 As to the County's contention that no verbal or written commitment was made, a contract implied in fact may be created by the acts and conduct of the parties. *Preston Farm & Ranch Supply v. Bio–Zyme Ent.,* 625 S.W.2d 295, 298 (Tex.1981). That being true, the essentials for the formation of a viable contract is not limited to verbal or written agreements. The County's fourth point of error is overruled.

In its fifth, sixth, and seventh points of error, the County asserts the trial court

erred in submitting questions two and three because the County did not follow proper statutory procedures to validly contract with the Hospital. In question three, the court inquired what sum of money was a reasonable charge for the medical goods and services provided by the Hospital. In making its contention, the County relies on both Texas and Oklahoma statutes governing such procedures.

■ Disposition of these points requires us again to determine whether Texas or Oklahoma substantive law should be applied in determining these issues. Since the alleged contract concerned treatment of Hall was furnished within the State of Texas, this state has the most significant relationship to the validity of the contract. We will, therefore, apply Texas substantive law in making our decision.

These points of error actually present two issues. The first is the question of what are the proper procedures for a county to contract with another entity. The second is whether, if proper procedures have not been followed, that failure affects the validity of a contract.

Because it is dispositive of these points of error, we shall proceed directly to consider the second issue. In *City of Houston v. Finn*, 139 Tex. 111, 161 S.W.2d 776, 777 (1942), the Court instructs:

It is the settled law in this State, as established by the decisions of this Court, that where a municipality knowingly receives property or services on an agreement which it had power to enter into as a contract, but which was not legally entered into so as to make it binding as a contract, it will be compelled to pay the reasonable value of the property or services so received, as on an implied contract.

This rule has been held applicable to counties as well as municipalities. *Harris County v. Emmite*, 554 S.W.2d 203 (Tex. Civ.App.—Houston [1st Dist.] 1977, writ dism'd w.o.j.).

■ Under the above authority, the County can be held liable to pay the reasonable value of the property or services received under an implied contract, even if the procedures necessary for a formal contract were not followed. Thus, the County's complaint about the manner in which the implied contract was created is not valid. The County's fifth, sixth, and seventh points of error are overruled.

In its eighth point of error, the County asserts the trial court erred in submitting a question on attorney fees because they are not allowed against a county under § 38.-001 of the Texas Civil Practice & Remedies Code, when the county is acting in a governmental function, as opposed to a proprietary function. The County also asserts the issue was not conditionally submitted and therefore constituted a comment on the weight of the evidence. Again, we note the County's point of error is multifarious.

■ Beyond that, the County has failed to preserve these grounds of error. The record reveals the County objected to the special issue only on the ground "that no adequate proof has been introduced into evidence that the proper notice was given; that is, the 30–day notice as required by Article 38.001 ad seque [sic], under Texas Civil Practice and Remedies Code." An objection at trial which does not correspond to the objection urged on appeal presents nothing for appellate review. *Exxon Corp. v. Allsup*, 808 S.W.2d 648, 655 (Tex.App.— Corpus Christi 1991, writ denied). The County's eighth point is overruled.

■ In its ninth point of error, the County contends the trial court erred in submitting the special issue on attorney fees because the Hospital failed to plead and prove that it submitted a proper notice to the County thirty (30) days prior to the filing of the lawsuit. Tex.Civ.Prac. & Rem. Code Ann. § 38.002 (Vernon 1986) provides in part:

To recover attorney's fees under this chapter:

* * * * * *

(2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and

(3) payment for the just amount owed must not have been tendered before the

expiration of the 30th day after the claim is presented.

While testimony was given that the claim was presented prior to the filing of the suit, it does not indicate the time frame prior to the suit within which the claim was presented. The County contends the claim must have been presented thirty days prior to the filing of the suit. We disagree.

In making its contention, the County primarily relies upon *Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940 (Tex.App.— Corpus Christi 1988, writ denied). However, in that case, the court noted that, to recover attorney fees, a plaintiff "had to allege and prove that they presented their claim arising under the contract to the bank at least thirty days *prior to the rendition of judgment*, and that the bank refused to pay the claim." Noting that the mere filing of suit or the allegation of a proper demand can supply the deficiency, the court held that *Shearer* had failed to make any other presentation of its claim for attorney fees at least thirty days prior to judgment, and affirmed a trial court refusal to award such fees. *Id.* at 946 (emphasis added).

The courts have consistently held that it is not necessary for such a claim to have been presented thirty days prior to the filing of suit. *Stuckey v. White*, 647 S.W.2d 35, 38 (Tex.App.—Houston [1st Dist.] 1982, no writ); *Ramirez v. Bagley Produce Co.*, 614 S.W.2d 582, 584–85 (Tex. Civ.App.—Corpus Christi 1981, no writ); *Hudson v. Smith*, 391 S.W.2d 441, 451 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.). We also note that although the *Shearer* court stated a presentment of the claim thirty days prior to rendition of judgment would be sufficient, we, as well as other courts, have stated that while presentment may be made after the filing of the suit, the presentment must be made thirty days prior to trial. *See Peissel v. Peissel*, 620 S.W.2d 796, 800 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ); *Sterling Const. Co. v. West Texas Equipment*, 597 S.W.2d 515, 518 (Tex.Civ.App.— Amarillo 1980, no writ).

Be that as it may, in this case testimony was presented that prior to the filing of the suit, the claim was presented. This suit was filed on May 24, 1989. Trial began on April 16, 1991 and judgment was rendered on May 17, 1991. Thus, under both the more liberal interpretation that presentment must be made thirty days prior to rendition of judgment and the more restrictive interpretation that presentment must be made thirty days prior to trial, the presentment was timely. The County's ninth point of error is overruled.

Having determined that the issue of attorney fees was properly before the court, logical continuity now requires us to discuss the Hospital's cross-point. When queried in question four as to the amount of reasonable and necessary attorney fees incurred and to be incurred by the Hospital in this lawsuit, the jury answer was "0". The thrust of the cross-point is that the trial court erred in denying its motion for judgment n.o.v., to disregard jury findings, for additional findings and to award it attorney fees. It also challenges the jury's answer "for the reason that there was no evidence to support the jury's verdict; or in the alternative, the jury's answer was against the great weight and preponderance of the evidence or, in the alternative, against all the evidence and manifestly unjust."

█ In supporting argument, the Hospital asserts the only testimony on the propriety and amount of attorney fees was that of its attorney. Since that statement is not challenged by the County, we accept that as correct. Tex.R.App. P. 74(f). In sum, that testimony was that a fee of $16,-724.50 was reasonable and necessary at the trial level, in the event of appeal to the Court of Appeals an additional $1,500, in the event of application for writ of error an additional $1,500, and if the application for writ of error was granted, an additional $1,500 in attorney fees would be reasonable and necessary. Two questions were asked on cross-examination; under what Texas statute the request for attorney fees was made and whether the Hospital had complied with all requirements of the statute.

In support of its cross-point, the Hospital cites two cases which are instructive. The first is *Barclay v. Johnson*, 686 S.W.2d 334 (Tex.App.—Houston [1st Dist.] 1985, no writ). In that case, as relevant, the appellee complained of the jury's failure to award him any attorney fees on appeal. In considering that complaint, the appellate court noted that appellee's attorney had testified as to attorney fees which would be reasonable on appeal. It commented that the attorney's testimony was uncontradicted, unimpeached, and internally consistent. It further noted that the cross-examination involved no questions concerning the reasonableness, necessity or amounts of the attorney fees on appeal.

In that state of the record, the *Barclay* court concluded the jury's failure to award attorney fees on appeal at any level was not only against the great weight and preponderance of the evidence, but was against all of the evidence and was manifestly unjust. In compliance with the remedy sought by the appellee, the court reversed the trial court judgment insofar as it failed to award attorney fees on appeal and remanded that portion of the case for new trial. *Id.* at 339.

The Hospital also cites *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880 (Tex.1990). In the Court of Appeals decision of that case, with the comment that Ragsdale presented uncontroverted trial evidence that an attorney fee of $22,500 was necessary and reasonable, the Court held that the trial court had abused its discretion in awarding only $150 as attorney fees. Having done so, the Court severed that portion of the case and remanded it for retrial. *Ragsdale v. Progressive Voters League*, 790 S.W.2d 77, 86 (Tex.App.—Dallas 1990), *rev'd*, 801 S.W.2d 880.

However, the Supreme Court, with the comment it was doing so in the interest of judicial economy, reversed that action of the Court of Appeals and rendered judgment for the attorney fees. En route to that action, the Court recognized the general rule that the allowance of attorney fees rests in the sound discretion of the trial court and may not be reversed without a showing of an abuse of that discretion. It also noted the general rule that the testimony of an interested party, even though uncontradicted, does no more than raise a fact issue to be determined by the fact finder. Even so, the Court recognized there is an exception to the rule and a court may award an amount of attorney fees as a matter of law. In order to do so, the Court instructed:

> While the present case fits the exception to the general rule, we do not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed. For example, even though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact. In order for the court to award an amount of attorneys' fees as a matter of law, the evidence from an interested witness must not be contradicted by any other witness or attendant circumstances and the same must be clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to case [sic] suspicion thereon. The court, as a trier of fact, may award attorneys' fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so.

*Id.* at 882.

Although the *Ragsdale* case involves an appeal from a bench, rather than a jury trial, its teaching is applicable to this case. The testimony relating to the Hospital's attorney fees was uncontradicted, unimpeached, internally consistent and readily subject to disproof. None of the surrounding circumstances of the case indicate that the amounts testified to are incredible or unreasonable. The Hospital's cross-point is sustained.

In its eleventh point of error, the County contends the trial court erred in submitting question number three. That question asked the jury:

What sum of·money, if any, do you find from a preponderance of the evidence is a reasonable charge for the reasonable and necessary medical goods and services provided by Amarillo Hospital District to Linda K. Hall. [sic]

The County asserts the question constituted a comment on the weight of the evidence "since it was not conditionally submitted as to whether or not the goods and services rendered were 'reasonable and necessary.' [sic] Thus, the question as submitted simply 'assumed' that the goods and services were 'reasonable and necessary'...." The County also contends there was no evidence the medical services and goods provided were reasonable and necessary "in view of her condition having been fatally shot in the head."

■ Initially, we once again note that the County's point of error is multifarious. However, we continue to address its contentions. The record reveals that the County did not object at trial to the form of the special issue. Therefore, the County has not preserved such ground of error. Tex.R.Civ.P. 274. Furthermore, by its wording the question limited the jury to consideration of only those goods and services which it might find were reasonable and necessary. Under the wording of the special issue, the jury could not consider all goods and services provided, but only those which were reasonable and necessary.

■ The County also contends there was no evidence to support the finding that the goods and services provided were reasonable and necessary. The affidavit of Jan Nabor, legal coordinator of Northwest Texas Hospital and custodian of the records of that hospital, was admitted at trial without objection. The affidavit reflects Nabor's statement, "The amounts charged for the services set forth in Exhibit 'A' were reasonable at the time and place the services were provided and the services were necessary." Exhibit "A" lists various services and goods provided and the charges as to each. We overrule the County's eleventh point of error.

■ In its thirteenth point of error, the County asserts the trial court erred "in failing to grant the motions for directed verdict and instructed verdict urged by the Defendant during the trial and subsequent to the return of the verdict by the jury, primarily for the reason that the Texas District Court had no jurisdiction over the Defendant, a political subdivision of the State of Oklahoma."

The County's "argument and authorities" under its thirteenth point of error consist of the following:

Appellant urged, prior to the time the trial court·submitted the charge to the Jury, that a directed verdict be rendered in favor of Beaver County, Oklahoma for:

1. No jurisdiction of an Oklahoma Political Sub–Division by State District Court in Texas. (S/F Vol. II, P. 169)

2. No showing of systematic and continuous contacts by Beaver County, Oklahoma, which subject it to jurisdiction in the State District Court of Potter County, Texas. (S/F Vol. II, P. 169)

3. Lack of legal capacity over the Oklahoma political sub-division.

Appellant [County] moved for Judgment notwithstanding the verdict of the Jury on the basis of no jurisdiction and no showing of any systematic and continuous contact with the State of Texas and no showing of any services requested by the Oklahoma Political Sub–Division in the State of Texas, no contract and no promise to pay for services rendered. (S/F Vol. II, P. 182)

■ Under this point, the County merely recites that (1) it moved for directed verdict and for judgment notwithstanding the verdict, and (2) the reasons asserted for the motions. It presents no supporting authority or argument in support of its proposition that the trial court erred in overruling its motions. Without support of authorities or argument, the County has waived this point of error. *Cox v. Rice Trust Inc.*, 648 S.W.2d 758, 759 (Tex. App.—Tyler 1983, no writ); *see* Tex.R.App. P. 74(f). We also note that the County's point of error when construed with its "ar-

---

**130**

gument and authorities," is multifarious. However, even if the point of error had not been waived, no error is present.

As to the County's apparent contention that the trial court erred because of lack of systematic and continuous contacts, the matter of due process limitations on personal jurisdiction has been addressed under the County's first point of error.

 As we construe the remainder of the County's point of error, the County asserts the trial court could not exercise jurisdiction over it because the County was entitled to sovereign immunity.[2] However, a state does not necessarily have a claim of immunity in the courts of another state. *Nevada v. Hall,* 440 U.S. 410, 416, 99 S.Ct. 1182, 1186, 59 L.Ed.2d 416, 422 (1979); *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 28 n. 4, 109 S.Ct. 2273, 2288 n. 4, 105 L.Ed.2d 1, 25 n. 4 (1989). In *Nevada v. Hall, supra,* the Court explicates "Such a claim necessarily implicates the power and authority of a second sovereign; its source must be found either in an agreement, express or implied, between the two sovereigns, or in the voluntary decision of the second to respect the dignity of the first as a matter of comity." 440 U.S. at 416, 99 S.Ct. at 1186.

 The County does not cite to any such agreement between the concerned sovereigns, and neither is this court aware of any. Whether the trial court should recognize any such claim as a matter of comity is a matter within the trial court's discretion. *New Process Steel v. Steel Corp. of Texas,* 638 S.W.2d 522, 524 (Tex.App.—Houston [1st Dist.] 1982, no writ); *Nowell v. Nowell,* 408 S.W.2d 550, 553 (Tex.Civ.App.—Dallas 1966, writ dism'd w.o.j.), *cert. denied,* 389 U.S. 847, 88 S.Ct. 53, 19 L.Ed.2d 116 (1967); *Dopps v. Dopps,* 636 S.W.2d 723, 725 (Tex.App.—Corpus Christi 1982, no writ). In the present case, the County has failed to establish an abuse of discretion by the trial court.

In that connection, we note the comment in *Portwood v. Portwood,* 109 S.W.2d 515, 523 (Tex.Civ.App.—Eastland 1937, writ dism'd w.o.j.) (quoting 9 Tex.Jur. pp. 356, 357), that to justify an application of comity, "it is generally necessary that the laws of the State where it is attempted to be invoked have a public policy in conformity to the foreign law; and obligations, contracts and rights arising under the provisions of law of other states will be enforced only where the foreign laws are analagous [sic] or similar to the laws where the litigation is begun." The record reveals that the County failed to present to the trial court any showing of Oklahoma law regarding the extent sovereign immunity might apply to the present cause to which comity might be given if the court had been so inclined.

The *Portwood* court also instructs us that the doctrine of comity "does not require that a Texas court enforce a foreign law or give effect to rights arising thereunder if to do so will contravene the policy of the state or work injury or injustice to a citizen or citizens thereof." *Id.* at 523. It is established in this state that counties are not immune from suit. *See Missouri Pacific R. Co. v. Brownsville Nav. Dist.,* 453 S.W.2d 812 (Tex.1970); Tex.Loc.Gov't Code Ann. § 81.041 (Vernon 1988). The County's thirteenth point of error is overruled.

In its fifteenth and sixteenth points of error, the County contends the evidence was factually and legally insufficient to support the jury's answer that an implied contract was created. We have examined the evidence in this case at some length in our discussion of other points. As we have noted above, a contract implied in fact is formed by acts of the parties. *Preston Farm & Ranch Supply v. Bio–Zyme Ent.,* 625 S.W.2d 295, 298 (Tex.1981). Suffice it to say, we have carefully reviewed all the evidence in this case relating to that question and find it sufficient to support the jury's answer to this issue. The County's

**2.** We note that sovereign immunity concerns both subject matter jurisdiction and personal jurisdiction. *See* 28 U.S.C.A. § 1330(a), (b) (Supp.1990); *Argentine Republic v. Amerada Hess,* 488 U.S. 428, 435 n. 3, 109 S.Ct. 683, 688 n. 3, 102 L.Ed.2d 818, 828 n. 3 (1989); *Verlinden B. V. v. Central Bank of Nigeria,* 461 U.S. 480, 485 n. 5, 489 n. 14, 103 S.Ct. 1962, 1967 n. 5, 1969 n. 14, 76 L.Ed.2d 81, 86–87 n. 5, 89 n. 14 (1983).

fifteenth and sixteenth points of error are overruled.

In summary, all of the County's points of error are overruled. Our sustention of the Hospital's cross-point, in the interest of judicial economy, is reformed to provide that the Hospital recover attorney fees in the amount of $16,724.50, together with additional attorney fees in the amount of $1,500 for appeal to this court; an additional attorney fee of $1,500 if application is made to the Supreme Court for writ of error; and an additional attorney fee of $1,500 if writ of error is granted by that Court. Tex.R.App. P. 80(b). As reformed, the judgment of the trial court is affirmed.