Higinio P. VERA and Alex
Vera, Appellants,

v.

NORTH STAR DODGE SALES, INC.;
Pat Powers; and E.L. Hall,
Appellees.

No. 04–96–00749–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 19, 1998.

Rehearing Overruled Jan. 25, 1999.

Robert W. Loree, Law Office of Robert W. Loree, Hector Gonzalez, III, Robert John Myers & Associates, San Antonio, for appellant.

Michael Flume, Munn & Flume, P.C., San Antonio, Walter R. Grimes, Law Offices of Walter Grimes, Houston, Edward M. Lavin, Law Offices of Edward Lavin, San Antonio, for appellee.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION ON APPELLEES' MOTION FOR REHEARING

ANGELINI, Justice.

Appellants' motion for rehearing is denied, and appellees' motion for rehearing is granted. Our opinion and judgment of July 22, 1998 are withdrawn, and the following opinion and judgment are substituted.

Higinio and Alex Vera appeal a directed verdict in favor of North Star Dodge, Pat Powers, and E.L. Hall. The suit arises from the sale of an automobile. The Veras raise eight points of error, contending that the trial court erred in directing the verdict in general and because Higinio did not release all of his and Alex's causes of action. The Veras further contend that the trial court erred in denying their motion for leave to file a supplemental petition as a trial amendment and in refusing to allow Higinio to testify that he is illiterate. We affirm, in part, and reverse, in part, the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

In the light most favorable to the Veras, the evidence presented at trial is as follows: In late December of 1993, Alex Vera was involved in an automobile collision in his 1992 Chrysler LeBaron. Alex drove the car from the scene, but felt it was unsafe to drive further. On January 7, 1993, Alex and his father, Higinio Vera, went to North Star Dodge in order to shop for a new car. Alex had a poor credit rating, so his father agreed to purchase a car for him to drive.

Alex and Higinio spoke with a salesman at North Star Dodge and test-drove a Mazda Protg. Alex explained to the salesman that he was willing to trade in the LeBaron for the Mazda, but that he was one payment behind on the LeBaron and it had been involved in a "minor" accident. The salesman told Alex and Higinio that North Star Dodge would take the trade-in and take care of the note.

Higinio does not speak English and he does not read or write English or Spanish. All negotiations with the salesman were in Spanish. When the Veras reached a deal with the salesman, they were taken to Pat Powers who handled the financing. The transactions with Powers were in English, with Alex translating for Higinio. An agreement was eventually reached, whereby Higinio could purchase the Mazda for $500 down and the LeBaron. Higinio's stepdaughter wrote a check for the down payment, Higinio signed the papers, and the Veras drove the Mazda home that night.

A few days later, the North Star Dodge salesman called Alex and asked him to bring the LeBaron in. Alex explained that he did not think the LeBaron was safe to drive. Alex testified that the salesman told him to take the car to the nearest dealership and that North Star Dodge would pick it up. However, the dealership records indicate that the LeBaron was taken in for repairs on January 4, 1993, before the Veras ever went to North Star Dodge to purchase the Mazda. Nevertheless, it happened that Alex was more than just one payment behind on the LeBaron, and the Chrysler Credit Corporation repossessed the LeBaron from the dealership before North Star Dodge ever saw it.

The dealership records indicate that there was $2,300 worth of damage to the LeBaron.

On January 18, 1993, Higinio received a letter from E.L. Hall, a manager at North Star Dodge. The letter informed Higinio that information given on his application for the purchase of the Mazda had been incorrect and that the Mazda needed to be returned. The letter stated that stolen vehicle charges would be made against him, if the car was not returned. The Veras did not return the car. Instead, they hired an attorney who notified North Star Dodge that the Veras wanted to complete the transaction.

On February 14, 1993, North Star Dodge sent Higinio a $500 check as reimbursement for his down payment. The checked contained the following release language on the back: "Endorsement releases North Star Dodge from any and all liability regarding the purchase of a 1993 Mazda Protg JM1B62266PO585288." Higinio endorsed and cashed the check. No payment was ever made on the Mazda. And, in March of 1993, North Star Dodge had the Mazda repossessed. Alex claims that he had $690 worth of personal property in the Mazda that was never returned to him.

The Veras sued North Star Dodge, Pat Powers, and E.L. Hall for violations of the DTPA, violations of the Consumer Credit Code, breach of contract, unlawful debt collection, conversion and wrongful repossession, fraud, and civil conspiracy. Following a seven day trial, the trial court directed a verdict in favor of the defendants and entered a take nothing judgment.

### ARGUMENT AND AUTHORITY

■ If a directed verdict does not specify the grounds upon which it was granted, the directed verdict will be upheld if the record discloses any basis for granting it. *Connell v. Connell,* 889 S.W.2d 534, 539 (Tex.App.—San Antonio 1994, writ denied). The judgment in this case does not disclose the reason for the directed verdict. However, the record reflects that the trial court determined

the Vera's claims were barred by the release Higinio signed when he endorsed the $500 reimbursement from North Star Dodge. In light of this fact and because the majority of the Vera's complaints on appeal relate to the release, we will begin our review of this case by addressing the release.

■ The Veras raise six points of error relating to the release. They first argue that the release is invalid because it does not satisfy the fair notice requirements established in *Dresser Industries, Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505 (Tex.1993).[1] During trial, the Veras argued that because Higinio could not read or write English, the check did not come with a cover letter explaining what it was, and the release language was in English, there was no meeting of the minds and, therefore, no contract of release. The Veras made no argument regarding conspicuousness at trial. Accordingly, their conspicuousness argument is waived on appeal. *See* TEX.R.APP. P. 33.1(a).

■ Even if the Veras had not waived this argument, we find that the language of the release is conspicuous. "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." TEX. BUS. & COMM.CODE ANN. § 1.201(10) (Vernon Supp. 1998). The release language in this case is on the back of the check, directly above the endorsement line. No other language surrounds the release language, and the language is clear and unambiguous. Under these circumstances, a reasonable person ought to have noticed the release. Therefore, the release is conspicuous.

■ The Veras next argue that they were not required to file a responsive pleading raising their defense to the release, as the appellees suggested at trial. And, if they were, the Veras alternatively argue that the trial court erred in refusing to allow them to make a trial amendment and in refusing to allow testimony of Higinio's illiteracy. The Veras' defense to the release is lack of mutu-

---

1. We note that the holding in *Dresser* is limited "solely to those types of releases which relieve a party in advance of liability for its own negligence." *Dresser,* 853 S.W.2d at 507. However, conspicuousness is a common requirement of the Uniform Commercial Code and applies to all releases. *See* TEX. BUS. & COMM.CODE ANN. § 1.201(10) (Vernon Supp.1998).

ality because of Higinio's illiteracy. The Veras have asserted this argument since the initiation of this lawsuit. Particularly, their original petition states that "[a]cting in concert and conspiring with others, E.L. Hall also sent Higinio Vera without any explanation, transmittal letter, or any other type of communication, a $500.00 check with release language typed on the back of the check knowing that he was represented by counsel at the time. At this time, Defendants also knew or should have known that Higinio Vera did not read or write English, but nonetheless sent the check fully aware of their wrongdoing." This pleading states that Higinio could not read the release, and therefore, sufficiently raises the issue of lack of mutuality. *See Roark v. Allen*, 633 S.W.2d 804, 810 (Tex.1982) (stating that a petition giving fair and adequate notice of facts on which pleader bases his claim is sufficient); TEX.R. CIV. P. 45 (noting pleadings should be liberally construed).

■ Accordingly, the trial court did not err when it refused to allow the Veras to amend their petition during trial. There was no need for such an amendment where the issue had already been raised in the original pleadings. Likewise, there was no need for the evidence regarding Higinio's illiteracy presented by bill of exception. Higinio had already testified that he could not read the release, and there was plenty of additional evidence regarding Higinio's illiteracy presented during trial. Accordingly, the excluded testimony was cumulative and any error in excluding it was harmless. *See Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *St. Paul Fire & Marine Ins. Co. v. Confer*, 956 S.W.2d 825, 831 (Tex. App.—San Antonio 1997, writ denied).

■ The Veras further argue that the appellees failed to satisfy their burden of proving a binding release. A release is a contract. *Garcia v. Villarreal*, 478 S.W.2d 830, 832 (Tex.Civ.App.—Corpus Christi 1971, no writ). Accordingly, in order to establish

their affirmative defense of release, the appellees must prove the elements of a contract. The Veras argue that the appellees have failed to prove the mutuality of intent necessary to the forming of a binding contract. Specifically, the Veras contend that, because Higinio is illiterate, he did not know what he was signing when he endorsed the check containing the release language. Therefore, according to the Veras, there was no meeting of the minds and no valid contract for release.

■ The cases the Veras rely upon deal with diminished mental capacity, as opposed to illiteracy, and are not controlling.[2] Absent proof of mental incapacity, a person who signs a contract is presumed to have read and understood the contract, unless he was prevented from doing so by trick or artifice. *Associated Employers Lloyds v. Howard*, 156 Tex. 277, 281, 294 S.W.2d 706, 708 (1956); *Indemnity Ins. Co. v. W.L. Macatee & Sons*, 129 Tex. 166, 170–71, 101 S.W.2d 553, 556–57 (Tex. Comm'n App.1937). This is true even in cases in which a party to the contract is illiterate. *W.L. Macatee & Sons*, 101 S.W.2d at 557.

■ It is well settled that illiteracy will not relieve a party of the consequences of a contract. *Brown v. Aztec Rig Equipment, Inc.*, 921 S.W.2d 835, 846 (Tex.App.—Houston [14th Dist.] 1996, writ denied); *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 146 (Tex.App.—Houston [1st Dist.] 1986, no writ). Every person who has the capacity to enter into a contract, in the absence of fraud, misrepresentation. or concealment, is held to know what words were used in the contract, to know their meaning, and to understand their legal effect. *Nguyen Ngoc Giao*, 714 S.W.2d at 146. Therefore, if a party is unable to read the contract, he must have it read to him. *Id.*

The Veras have not raised an issue regarding Higinio's mental competency or regarding fraud, misrepresentation, or concealment in the procurement of the release. There-

---

**2.** *See Airline Motor Coaches v. Parks*, 190 S.W.2d 142, 145 (Tex.Civ.App.—Beaumont 1945, no writ) (party mentally deficient due to shock and grief); *Texas & Pacific Rwy. Co. v. Hubbard*, 169 S.W. 1058, 1059 (Tex.Civ.App.—Texarkana 1914, no writ) (party not mentally competent when in a semi-conscious state); *Johnson v. Gulf, C. & S.F. Rwy.Co.*, 36 Tex.Civ.App. 487, 81 S.W. 1197, 1198 (Tex.Civ.App.—Austin 1904, no writ) (party mentally incapacitated).

fore, because the release is conspicuous and Higinio is charged with knowledge of its contents, it is a valid and binding contract.

■ Having determined that the release is valid, we must next address the scope of the release. The Veras contend that the release does not apply to some of Higinio's claims against North Star Dodge, nor to Higinio's claims against Powers and Hall. They also argue that it does not release any of Alex's claims. First, the Veras argue that because the release referred only to claims concerning the purchase of the Mazda, it does not encompass their unlawful debt collection, conversion and wrongful repossession claims. We disagree. The release language at issue operated to "release[ ] North Star Dodge from any and all liability regarding the purchase of a 1993 Mazda Protg...." The Veras base their unlawful debt collection claim on the letter sent by Hall which informed Higinio that the information given on his application for purchase of the Mazda was inaccurate and demanded that the car be returned. This letter relates directly to the purchase of the Mazda and is, therefore, encompassed by the release. Similarly, the conversion and wrongful repossession claims stem from the purchase of the Mazda as they relate to the repossession of the Mazda after the terms of purchase were not satisfied.

■ The Veras' further argue that even if the release is valid, it does not operate to defeat their DTPA claims because a DTPA claim may not be waived. See TEX. BUS. & COMM.CODE ANN. § 17.42(a) (Vernon Supp.1998) ("Any waiver by a consumer of the provisions of [the Deceptive Trade Practices–Consumer Protection Act] is contrary to public policy and is unenforceable and void"). However, the waiver of DTPA claims has generally been prohibited in pre-transaction situations where a consumer waives a claim before a claim exists. See Newman v. Tropical Visions, Inc., 891 S.W.2d 713, 722 (Tex.App.—San Antonio 1994, writ denied). In this case, the release was executed in satisfaction of all claims Higinio had in relation to the purchase of the Mazda after a controversy regarding that purchase had arisen. Accordingly, Higinio released known DTPA claims when he endorsed and cashed

the refund check. See Ostrow v. United Business Machines, Inc., 982 S.W.2d 101, 104–105 (Tex.App.—Houston [1st Dist.] 1998, n.w.h.). As the Ostrow court noted, such a situation is not one from which the DTPA seeks to protect consumers. See id. If post-dispute waivers were prohibited, efforts to settle disputes outside of litigation would be thwarted. See id. We, therefore, find that the release in this case applied to Higinio's DTPA claims. See id.

■ The Veras next contend that the release cannot operate to release Higinio's claims against Powers and Hall because Powers and Hall were not identified as parties to the release. Again, we disagree. Any claims Higinio has against Powers and Hall relate to actions taken by them on behalf of North Star Dodge in the sale of the Mazda. The Veras have made no claim against either Powers or Hall for any individual action. In this case, it is clear that, the release of "North Star Dodge" from any liability associated with the sale of the Mazda, also released the North Star Dodge employees associated with that sale. See Winkler v. Kirkwood Atrium Office Park, 816 S.W.2d 111, 113–14 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (finding individuals associated with health club were included in release that released "the Club" from liability from for injuries suffered during participation in club programs). Under the circumstances, the connection of Powers and Hall with North Star Dodge and the sale of the Mazda is apparent. See id. Therefore, the release encompasses Higinio's claims against North Star Dodge as well as his claims against North Star Dodge employees involved in the sale of the Mazda.

■ The Veras argue that Powers and Hall waived their right to rely on the release by failing to plead the release as an affirmative defense to the Veras' claims. While neither Powers' nor Hall's pleadings assert release, they both assert that Powers and Hall were acting in the course and scope of their employment with respect to selling the Mazda in question and cannot be held individually liable. Accordingly, Powers and

Hall placed themselves under the umbrella of North Star Dodge's pleadings, which do assert release. Powers' and Hall's pleadings are, therefore, sufficient to raise the issue of release.

■■■ With respect to Alex's claims, the Veras argue that Higinio, by signing the release, could not release Alex's claims because Alex is not a party to the release. We disagree with this argument as it pertains to the majority of Alex's claims. There is no evidence that Alex was a party to the transaction giving rise to this lawsuit. Higinio signed every document pertaining to the sale of the Mazda and the title to the Mazda was to be placed in Higinio's name. The record contains no evidence, other than Alex's assertions, that the car was purchased on his behalf. Alex never made a payment on the Mazda, nor did he execute any document or agreement pertaining to the car. In fact, all of the evidence points to the fact that Higinio purchased the car independently, and allowed Alex to drive it. This evidence demonstrates the fact that Alex was a beneficiary of his father's generosity and good wishes, not that he was an intended third party beneficiary of the sales agreement. *See Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503–04 (Tex.1975); *Brunswick Corp. v. Bush*, 829 S.W.2d 352, 354 (Tex.App.—Fort Worth 1992, no writ); *Bruner v. Exxon Co., U.S.A.*, 752 S.W.2d 679, 683 (Tex.App.—Dallas 1988, writ denied) (all holding intent to benefit a third party must be clearly apparent from the contract itself).

■■■ Under these circumstances, Alex does not own independent claims against either North Star Dodge, Powers, or Hall for any liability in connection with the sale of the Mazda. The only independent cause of action Alex asserts in this case is conversion as it pertains to his personal property which was taken when the Mazda was repossessed. A release, signed by another, may not operate to extinguish a non-releasing party's independent cause of action. *See Torchia v. Aetna Cas. & Sur. Co.*, 804 S.W.2d 219, 225 (Tex.App.—El Paso 1991, writ denied). However, where a non-releasing party's claim is not independent, but wholly dependent, on the releasor's claim, the release

necessarily bars the non-releasing party's claim. This is particularly true in the present case where all but one of Alex's claims are not just dependent on Higinio's claims, but are, for all practical purposes, the same claims. Accordingly, we find that the release applies to all of Alex's claims other than his claim of conversion.

We have determined that the release is valid and that it bars all claims raised in this lawsuit other than Alex's conversion claim. However, before we may remand the conversion causes of action to the trial court, we must review the evidence in order to determine whether a directed verdict was appropriate as to these claims, notwithstanding the release. *See Qantel Bus. Sys., Inc. v. Custom Controls*, 761 S.W.2d 302, 304 (Tex.1988).

■■■ Alex contends that $690 worth of his personal property was in the Mazda when it was repossessed and that those items have never been returned to him. There is no evidence that Hall was in any way involved in the repossession of the Mazda or with Alex's personal property. Similarly, although Powers testified that he ordered the Mazda repossessed, there is no evidence that he exercised any power or control over Alex's personal property or that he even knew of its existence. Accordingly, the directed verdict on the conversion claim as it pertains to both Powers and Hall was appropriate. However, by the terms of its sales agreements, North Star Dodge is ultimately responsible for any personal property in an automobile it repossesses. There is evidence that the personal property was in the Mazda when it was repossessed and that neither Higinio nor Alex was ever contacted about it. The property was never returned. Under these circumstances, the conversion claim against North Star Dodge should be resolved in the trial court.

## CONCLUSION

In conclusion, the directed verdict as to all of Higinio's claims is affirmed. The directed verdict as to all of Alex's claims, other than conversion, is, likewise, affirmed. The directed verdict on Alex's conversion claim against Powers and Hall is affirmed. And,

finally, the directed verdict on Alex's conversion claim against North Star Dodge is reversed and remanded to the trial court.