NO. 07-01-0038-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 17, 2002

_____

HARRY LEMAIRE, APPELLANT

V.

DON J. DAVIS, GOLDEN GATE, INC., NUCORP, INC.,
CAGE, HILL & NIEHAUS, L.L.P., RONALD R. NIEHAUS,
HAL T. THORNE AND THORNE & THORNE, INC., APPELLEES

_____

FROM THE 11TH DISTRICT COURT OF HARRIS COUNTY;

NO. 98-22694; HONORABLE MARK DAVIDSON, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In four issues, appellant Harry Lemaire challenges a take-nothing judgment in favor

of appellees Don J. Davis, Golden Gate, Inc., NuCorp, Inc., Cage, Hill & Niehaus, L.L.P.,

Ronald R. Niehaus, Hal T. Thorne, and Thorne & Thorne, Inc.[1]  In the suit, appellant

_____

[1]The claims of Barbara Lemaire were non-suited during the trial, as were some of the claims against several of the other defendants.  Defendant Romeo James Milano did not appear at trial.

sought to recover damages for various causes of action associated with the sale of his interest in a limited partnership. In the judgment, appellees Don J. Davis and NuCorp, Inc. were awarded attorney fees in the amount of $89,490. For reasons we later discuss, we affirm the judgment of the trial court.

In his issues, appellant argues the trial court erred in 1) submitting jury question no. 1 without an instruction on failure of consideration and without a definition of consideration, 2) submitting jury question no. 2 because it was redundant, confusing, and misstates the law with respect to the elements required to establish an attorney-client relationship, 3) failing to submit an attorney-client privity question to the jury regarding Ronald Niehaus and Cage, Hill & Niehaus and the limited partnership, and 4) denying appellant's claims against Hal T. Thorne and Thorne & Thorne, Inc. seeking imposition of a constructive trust.

To understand appellant's complaints in this appeal, it is necessary to recite the events leading up to the underlying lawsuit. Appellant and appellee Don Davis (Davis) had been involved in some business dealings with each other. In one instance, Davis assisted appellant in recovering a claim against MBank by introducing him to a lawyer with whom Davis had worked, appellee Ron Niehaus, and the law firm of Cage, Hill & Niehaus (jointly referred to as the Niehaus appellees). The Niehaus appellees later prepared wills for appellant and his wife.

In 1991, Davis approached appellant and Nan Patton (Patton) about investing in a limited partnership to develop real estate property located at the site of a former Holiday Inn at 2100 Memorial Drive in Houston. Appellant and Patton agreed to invest $300,000

2

in a limited partnership. In return they would each own a 25% interest in the limited partnership. An agreement creating 2100 Memorial Drive, Ltd. was prepared by the Niehaus appellees to carry out that purpose. Appellant and Patton each executed the document.

The general partner of the limited partnership was Golden Gate, Inc. (Golden Gate), in which Davis was the sole shareholder, officer, and director. Later that same year, the limited partnership acquired ownership of the 2100 Memorial Drive real estate. Although the agreement did not require that he do so, appellant later made two additional loans to the limited partnership totaling $125,000. In 1992, appellant entered into an unrelated business transaction with Davis and appellee NuCorp, Inc. (NuCorp), in which appellant purchased a $250,000 interest in distributions owed by NuCorp to Davis.

Several years later, appellant and Patton became dissatisfied with their investment in the limited partnership. Patton retained Romeo Milano (Milano) a/k/a James McMillian to assist in bringing about a sale of the real estate owned by the partnership. Patton also arranged a meeting between Milano and appellant. Milano apparently represented that the only way he could help Patton and appellant would be if they assigned their interest in the limited partnership to him so that he would own 50% of the partnership and could force a sale of the assets. Milano then sent appellant a bill of sale, a release, and a mutual release, indemnity and settlement agreement to be executed by appellant. These instruments were prepared by the Niehaus appellees, who were the attorneys for the limited partnership.

On September 30, 1996, appellant executed a bill of sale transferring his limited partnership interest to GMC Group Investment, Inc. (GMC), which was owned by Milano. Subsequently, appellant retained K. Ray Campbell to assist him in his dealings with Milano and, on October 10, 1996, appellant's signature on the releases was notarized. At that time, appellant and Milano signed an agreement in which Milano agreed to force a sale of the partnership property and to pay appellant his share of the proceeds.

Milano hired appellees Hal T. Thorne and Thorne & Thorne, Inc. (the Thorne appellees) to assist with the closing of the sale of the partnership property. The Thorne appellees incorporated GMC and sent the Niehaus appellees instructions to wire GMC's share of the sale to their client's trust account. At the closing, GMC sold its partnership interest to Golden Gate for $700,000. The partnership property was then sold to a third party. The Niehaus appellees drafted the closing documents to be used in the sale. The sum of $700,000 was transferred to the Thorne appellees' trust account. On December 20, 1996, Campbell wrote the Thorne appellees demanding that the proceeds of the closing be paid to appellant, but the Thorne appellees claimed no knowledge of any agreement between Milano and appellant. The money was distributed from the trust account as dictated by Milano. Appellant never received any money from his investment in the partnership.

Appellant then brought suit against the various parties involved in the transactions alleging claims of legal malpractice, breach of fiduciary duty, fraud, violations of the Deceptive Trade Practices Act, conversion, civil conspiracy, breach of contract, and

4

seeking declaratory relief. At trial, the jury found that appellant had released Golden Gate, Davis, and the Niehaus appellees from the claims and causes asserted in the lawsuit. The jury also found that, from the formation of 2100 Memorial Drive, Ltd., an attorney-client relationship did not exist between appellant and the Niehaus appellees. Finally, the jury found that appellant agreed to indemnify Davis from all claims arising out of the business dealings between Davis and appellant. It was because of these findings that the trial court rendered its judgment against appellant.

In his first issue, appellant contends the trial court erred in submitting its initial jury question. In that question, the jury was asked if appellant had released Golden Gate, Davis, and/or the Niehaus appellees from the claims and causes of action asserted in the lawsuit. The jury was also instructed that a release is not valid as to a released party if it was procured by the fraud of that party. A definition of fraud was furnished to the jury. In supporting his argument, appellant reasons the question was improper because it did not contain a definition of consideration and it failed to instruct the jury that the release was invalid if it was not supported by consideration. Appellant contends the definition and instruction were required because his testimony that no consideration was received for the release was uncontroverted. Because consideration is an essential element to a release or settlement, and because release was raised as an affirmative defense, appellant posits that it was the defendant's burden to prove its existence. He also argues that the trial court abused its discretion in omitting the instruction because it concerned an essential element of a claim or release.

5

The trial court has wide discretion in determining the proper issues and instructions to be submitted to the jury. *Maddox v. Denka Chemical Corp.*, 930 S.W.2d 668, 670 (Tex. App.--Houston [1st Dist.] 1996, no writ); *Board of County Commissioners of County of Beaver, Okla. v. Amarillo Hosp. District*, 835 S.W.2d 115, 125 (Tex.App.--Amarillo 1992, no writ). However, it is required that the trial court submit the questions, instructions, and definitions raised by the written pleadings and the evidence and which are proper to enable the jury to render a verdict. Tex. R. Civ. P. 277 and 278. An instruction is proper if it finds support in any evidence of probative value or reasonable inferences that may be drawn from the evidence and which may be of some assistance to the jury. *Sutherland v. Illinois Employers Ins. Co. of Wausau*, 696 S.W.2d 139, 141 (Tex.App.--Houston [14th Dist.] 1985, no writ). Error in the jury charge only requires reversal if, after consideration of the pleadings, the evidence presented at trial, and the charge in its entirety, the error amounted to such a denial of a party's rights as was reasonably calculated to, and probably did, cause rendition of an improper verdict. *Island Recreational Development Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986).

Because appellees raised the affirmative defense of release, they had the burden to establish the existence of a valid release. *Vera v. North State Dodge Sales, Inc.* 989 S.W.2d 13, 17 (Tex.App.--San Antonio 1998, no pet.). However, a written instrument reciting a consideration imports one and, to offset that presumption, the party seeking to assert a lack of consideration must present evidence on that issue. *Buddy L. Inc. v. General Trailer Co., Inc.*, 672 S.W.2d 541, 547 (Tex.App.--Dallas 1984, writ ref'd n.r.e.).

6

We note that both releases with which we are concerned recite on their face that the release is given "for and in consideration of" either $10 or $10 and the recitals contained in the document. Further, appellant did not plead a failure of consideration in his third amended original petition, which was his last live pleading before trial.

Nevertheless, some evidence as to a lack of consideration was offered at trial, and assuming arguendo that the admittance of such evidence amounted to a trial of the issue by consent, the amount of the consideration given for a release needs only to have some value in the eyes of the law. *Id.* If the promisee parts with some legal right or sustains some legal injury as an inducement for the agreement, that will be sufficient. *Lassiter v. Boxwell Bros, Inc.*, 362 S.W.2d 884, 886 (Tex.Civ.App.--Amarillo 1962, no writ).

The instrument denominated as Mutual Release Indemnity and Settlement Agreement between appellant and Davis and Nucorp was a mutual release, *i.e.*, in exchange for appellant's release of Davis and NuCorp from any claims arising from their business dealings preceding the date of the agreement, appellant received the same release from Davis and NuCorp.

In the other release, appellant released 2100 Memorial Drive, Ltd., Golden Gate, Davis, and their attorneys, among others, from liability related to appellant's limited partnership interest in 2100 Memorial Drive, Ltd. The document also recites:

> Releasor has assigned his limited partnership interest in 2100 for consideration, which assignment has been approved by GOLDEN GATE. In conjunction with said assignment the parties hereto execute this Release.

Thus, the release must be viewed within the context of the partnership agreement and the assignment of appellant's limited partnership agreement to GMC. Furthermore, neither GMC nor Milano are parties to the release. Because of this, the question is not whether there was consideration between those parties but is, rather, whether there was consideration between appellant and Golden Gate, Davis, and the Niehaus appellees for the release in their favor. The partnership agreement provides that a limited partner may only assign his interest with the written approval of the general partner and although approval may not be unreasonably withheld, whether to give approval is within the sole discretion of the general partner.

When questioned as to the reason he signed the releases, appellant gave the following testimony:

Q. Did you understand by signing this, you were releasing the limited partnership, Golden Gate, and from liability?

A. Yes.

Q. Why did you do this?

A. He said it was needed in order to close.

Q. Is that - -

\* \* \*

Q. You mean Mr. Milano said he needed it?

A. Yes.

Q. Did Mr. Milano tell you why he needed to get Mr. Davis released in order to close?

A. Well, it's just a normal proceeding, I think. That is when releases are exchanged.

Q. At closing?

A. At closing.

Q. Was that your - -

A. So if my wife was not going to be there, I needed to have an executed instrument here in the States that would be effective or valid for purposes if needed.

Q. But it was your understanding that would be only effective at closing, if there was a closing?

A. I understood it would only be effective if I got my money back.

Q: You never got your money?

A. I wasn't going to release anybody at all unless it was tied to me receiving money.

This colloquy shows that appellant understood that the releases were a normal part of the closing transaction, which included the assignment of his interest to GMC, approval of the sale by the general partner,[2] and the ultimate sale of the partnership property, which was what appellant desired.

Appellant had a separate agreement with Milano in which it was stated that appellant had executed and delivered the bill of sale and releases to Milano in exchange for Milano using his best efforts to close the sale of the partnership and/or its property to

_____

[2]There is no written approval of the assignment from appellant to GMC in the record and there is some evidence that one did not exist. However, by virtue of the fact that the interest of GMC was assigned to Golden Gate at the closing and Golden Gate then sold the partnership property, Golden Gate can be said to have impliedly given consent.

9

a third party. If Milano was unable to do so, he would return the documents to appellant. If Milano did effect such a closing, he was to pay appellant his share of the proceeds from the sale of the partnership and its assets. As the facts indicate, Milano did bring about the intended closing, but he failed to pay appellant his share of the proceeds as required by his contract. Therefore, the evidence as to failure of consideration that was presented at trial actually relates to the agreement between appellant and Milano, not to the lack of consideration between the parties to the releases. That being so, with respect to the releases, lack of consideration was not raised by the trial evidence and no instruction was necessary in that regard.

Appellant also complains that by placing the question as to the releases as the first query to be answered by the jury, it "invites the jury to pour-out the Lemaire's" and "emphasizes the release defense." However, appellant made no trial objection to the charge on that basis. It is necessary that a party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Tex. R. Civ. P. 274. A failure to do so waives the objection. Also, an objection that an instruction may confuse the jury without further explanation is too general to meet the specificity requirement. *Castleberry v. Branscum*, 721 S.W.2d 270, 276-77 (Tex. 1986). Furthermore, the goal of a jury charge is to submit the issues for their decision logically, simply, clearly, fairly, correctly, and completely, and the trial court has broad discretion in accomplishing that end as long as the charge is legally correct. *Hyundai Motor Co. v. Rodriquez ex rel Rodriquez*, 995 S.W.2d 661, 664 (Tex. 1999). The trial court did not abuse its discretion in refusing

10

to give a failure of consideration instruction, nor did it abuse its discretion in the order it presented to the jury questions. Appellant's first issue is overruled.

In his second issue, appellant complains of the second jury question. In that question, the jury was asked to determine whether an attorney-client relationship existed between appellant, individually and not as a limited partner, and the Niehaus appellees with respect to the operations of the limited partnership. Appellant argues the instruction contains contradictory and confusing definitions of an attorney-client relationship.

The instruction in question reads:

An attorney-client relationship exists if the attorney has agreed, expressly or impliedly, to render legal services of a specified or general nature to the person claiming such relationship.

All that is required to create an attorney-client relationship is that the parties, expressly or implicitly by their conduct manifest an intention to create the attorney-client relationship.

Specifically, appellant argues that the first part of the instruction requires an agreement by an attorney to provide legal services. However, he continues, the second part of the instruction is broader and requires explicit or implicit conduct that is determined by the conduct of both parties. Because there is no explanation as to how these two allegedly different standards relate to one another and whether one or both standards must be met, he posits the instructions are confusing. Furthermore, he contends, the instructions fail to tell the jury of the attorney's duty to tell a client that he is not representing him under the facts of the case. Further, he posits, because the jury had already answered the first

11

question affirmatively, the confusion of the second question was exacerbated because it suggested to the jury, without explanation, that their answer to the first question was not dispositive.

The attorney-client relationship question between appellant and the Niehaus appellees arose because he claimed that at the time of the preparation and execution of the limited partnership agreement, which occurred over a three-hour period, he believed the Niehaus appellees were representing him. In that connection, appellant testified that in the past, the Niehaus appellees had represented him in some legal matters[3] and, prior to executing the limited partnership agreement, he inquired whether he needed his own attorney and was told by Ron Niehaus that he did not need one. However, Niehaus also told appellant that he represented the limited partnership, although he did not explain to appellant that he did not represent him individually. Later, the Niehaus appellees also prepared the closing documents for the sale of the partnership interest and property. Appellant sued the Niehaus appellees for malpractice and breach of fiduciary duty.

The law is well-settled that an attorney-client relationship is a contractual relationship in which an attorney agrees to render professional services for a client, and the relationship may be established either expressly or impliedly from the conduct of the parties. *Mellon Service Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 437 (Tex.App.--Houston [1st Dist.] 2000, no pet.); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405

---

[3] The testimony showed that the Niehaus appellees had also previously represented Davis in legal matters.

12

(Tex.App.--Houston [14th Dist.] 1997, writ dism'd by agr.); and *Byrd v. Woodruff*, 891 S.W.2d 689, 700 (Tex.App.--Dallas 1994, writ dism'd by agr.). The instructions given by the trial court substantially track this language. We disagree that the instructions as submitted gave the jury two different standards. The first instruction defines the relationship, and the second instruction states how the existence of such a relationship is to be determined. Although the contractual relationship exists if the attorney agrees to render professional services, the existence of that relationship is to be determined by the express or implied conduct of both parties. Stated differently, the attorney-client relationship does not exist merely because one party subjectively believes the other has agreed to render legal services. *See Moran*, 946 S.W.2d at 406.[4]

Appellant also argues error in that the question failed to instruct the jury of the duty to inform a client that the attorney was not representing him under the facts of this case. He further complains of the placement of the question after question no. 1. However, again, appellant failed to make those specific objections at trial. By failing to so do, he has waived those complaints on appeal. *See Murphy v. Seabarge, Ltd.,* 868 S.W.2d 929, 935 (Tex.App.--Houston [14th Dist.] 1994, writ denied). Appellant's second issue is overruled.

---

[4]In *Moran,* the appellant complained of error in the charge because the court failed to instruct the jury that "agreed" meant a meeting of the minds which must be determined from the objective manifestations made by one party to another and not by the subjective intent of any one party. The court held the trial court abused its discretion by failing to give that instruction, but the error did not require reversal. *Id.* That particular complaint is not before us in this appeal.

13

In his third issue, appellant contends the trial court erred in failing to submit an attorney-client privity question to the jury regarding the Niehaus appellees and the limited partnership. Because his claims were brought both in his individual capacity and on behalf of the limited partnership, he argues question no. 2 should have contained an inquiry as to the attorney-client relationship based on his derivative action. However, appellant did not make this complaint during the charge conference and he has, therefore, waived it. Appellant's third issue is overruled.

In his fourth and final issue, appellant complains of the trial court's denial of his claim against the Thorne appellees seeking imposition of a constructive trust. He bases this complaint on the fact that the Thorne appellees received funds belonging to appellant, which they placed in their trust account and refused to release to him, even after receiving notice that appellant claimed he was entitled to them. Appellant contends he was entitled to the imposition of a constructive trust as a matter of law, but cites no authority in support of that claim. Without argument and citation of authorities, an appellant waives his issue. *Seymour v. American Engine & Grinding Co.*, 956 S.W.2d 49, 61 (Tex.App.--Houston [14th Dist.] 1996, writ denied); *Howell v. Murray Mortgage Co.*, 890 S.W.2d 78, 81 (Tex.App-- Amarillo 1994, writ denied). Moreover, in granting judgment in favor of the Thorne appellees, the court opined:

> The law review article and the case as cited in the Baylor Law Review article by Mr. DeShazo are distinguishable in that they rely on the statutory lien, the workers' comp, or some other kind of statutory or some other kind of a lien relationship. I am unable to find that anything like that kind of relationship exists in this court.

14

> Furthermore, I find that Mr. Thorne was simply disbursing funds from his trust account as directed by his client as he was legally obligated to do. Therefore I render judgment in favor of Defendant Thorne and Thorne & Thorne - -

> \* \* \*

> –that they take nothing from the plaintiff on the theory of constructive trust, which was the only theory you still had against them . . . .

A constructive trust is an equitable remedy imposed to prevent unjust enrichment. *Meadows v. Bierschwale,* 516 S.W.2d 125, 131 (Tex. 1974). The imposition of a constructive trust is within the discretion of the trial court. *Carr v. Weiss*, 984 S.W.2d 753, 767 (Tex.App.--Amarillo 1999, pet. denied); *Hoggett v. Brown,* 971 S.W.2d 472, 494 (Tex. App.--Houston [14th Dist.] 1997, pet. denied). There was no evidence that the Thorne appellees were unjustly enriched and the evidence supports the finding of the trial court. Thus, the trial court did not abuse its discretion in refusing to impose a constructive trust. Appellant's fourth issue is overruled.

In summary, all of appellant's issues are overruled and the judgment of the trial court is affirmed.

John T. Boyd<br>
Chief Justice

Publish.