NO. 07-09-0124-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 28, 2009
______________________________

IN RE WAYNE ERNEST BARKER, RELATOR
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Relator, Wayne Ernest Barker, has filed an application for writ of mandamus in
which Barker requests this Court issue the writ to compel respondent, Barbara Sucsy,
Lubbock County District Clerk, to file an application for writ of habeas corpus that Barker
has previously sent her. Alternatively, Barker requests that this Court remove Sucsy from
her office as Lubbock County District Clerk. We deny the petition.
          Barker’s application fails to establish his entitlement to mandamus relief. A court
of appeals has authority to issue writs of mandamus against district and county court
judges within the court of appeals’s district and all writs necessary to enforce its jurisdiction. 
Tex. Gov’t Code Ann. § 22.221(a), (b) (Vernon 2004). However, Sucsy is not a judge. As
a result, Sucsy is not within our jurisdictional reach and we have no authority to issue a writ
of mandamus against her absent a showing that issuance of the writ is necessary to
enforce our jurisdiction. In re Felder, No. 07-07-0111-CV, 2007 Tex.App. LEXIS 2782, at
*2 (Tex.App.–Amarillo April 11, 2007, orig. proceeding) (mem. op.); In re Cummins, No. 07-04-0354-CV, 2004 Tex.App. LEXIS 8107, at *2 (Tex.App.–Amarillo September 2, 2004,
orig. proceeding) (mem. op.); In re Coronado, 980 S.W.2d 691, 692 (Tex.App.–San
Antonio 1998, orig. proceeding). Barker does not identify how issuance of the writ of
mandamus against Sucsy would be necessary to enforce our jurisdiction. 
          As Barker’s application for Writ of Mandamus does not identify any basis upon
which this court would have authority to issue a writ of mandamus, we deny the petition.
 
                                                                Mackey K. Hancock

                                                                           Justice



d be if they assigned their interest in the
limited partnership to him so that he would own 50% of the partnership and could force a
sale of the assets. Milano then sent appellant a bill of sale, a release, and a mutual
release, indemnity and settlement agreement to be executed by appellant. These
instruments were prepared by the Niehaus appellees, who were the attorneys for the
limited partnership.

 On September 30, 1996, appellant executed a bill of sale transferring his limited
partnership interest to GMC Group Investment, Inc. (GMC), which was owned by Milano. 
Subsequently, appellant retained K. Ray Campbell to assist him in his dealings with Milano
and, on October 10, 1996, appellant's signature on the releases was notarized. At that
time, appellant and Milano signed an agreement in which Milano agreed to force a sale of
the partnership property and to pay appellant his share of the proceeds.

 Milano hired appellees Hal T. Thorne and Thorne & Thorne, Inc. (the Thorne
appellees) to assist with the closing of the sale of the partnership property. The Thorne
appellees incorporated GMC and sent the Niehaus appellees instructions to wire GMC's
share of the sale to their client's trust account. At the closing, GMC sold its partnership
interest to Golden Gate for $700,000. The partnership property was then sold to a third
party. The Niehaus appellees drafted the closing documents to be used in the sale. The
sum of $700,000 was transferred to the Thorne appellees' trust account. On December
20, 1996, Campbell wrote the Thorne appellees demanding that the proceeds of the
closing be paid to appellant, but the Thorne appellees claimed no knowledge of any
agreement between Milano and appellant. The money was distributed from the trust
account as dictated by Milano. Appellant never received any money from his investment
in the partnership.

 Appellant then brought suit against the various parties involved in the transactions
alleging claims of legal malpractice, breach of fiduciary duty, fraud, violations of the
Deceptive Trade Practices Act, conversion, civil conspiracy, breach of contract, and
seeking declaratory relief. At trial, the jury found that appellant had released Golden Gate,
Davis, and the Niehaus appellees from the claims and causes asserted in the lawsuit. The
jury also found that, from the formation of 2100 Memorial Drive, Ltd., an attorney-client
relationship did not exist between appellant and the Niehaus appellees. Finally, the jury
found that appellant agreed to indemnify Davis from all claims arising out of the business
dealings between Davis and appellant. It was because of these findings that the trial court
rendered its judgment against appellant.

 In his first issue, appellant contends the trial court erred in submitting its initial jury
question. In that question, the jury was asked if appellant had released Golden Gate,
Davis, and/or the Niehaus appellees from the claims and causes of action asserted in the
lawsuit. The jury was also instructed that a release is not valid as to a released party if it
was procured by the fraud of that party. A definition of fraud was furnished to the jury. In
supporting his argument, appellant reasons the question was improper because it did not
contain a definition of consideration and it failed to instruct the jury that the release was
invalid if it was not supported by consideration. Appellant contends the definition and
instruction were required because his testimony that no consideration was received for the
release was uncontroverted. Because consideration is an essential element to a release
or settlement, and because release was raised as an affirmative defense, appellant posits
that it was the defendant's burden to prove its existence. He also argues that the trial court
abused its discretion in omitting the instruction because it concerned an essential element
of a claim or release.

 The trial court has wide discretion in determining the proper issues and instructions
to be submitted to the jury. Maddox v. Denka Chemical Corp., 930 S.W.2d 668, 670 (Tex.
App.--Houston [1st Dist.] 1996, no writ); Board of County Commissioners of County of
Beaver, Okla. v. Amarillo Hosp. District, 835 S.W.2d 115, 125 (Tex.App.--Amarillo 1992,
no writ). However, it is required that the trial court submit the questions, instructions, and
definitions raised by the written pleadings and the evidence and which are proper to enable
the jury to render a verdict. Tex. R. Civ. P. 277 and 278. An instruction is proper if it finds
support in any evidence of probative value or reasonable inferences that may be drawn
from the evidence and which may be of some assistance to the jury. Sutherland v. Illinois
Employers Ins. Co. of Wausau, 696 S.W.2d 139, 141 (Tex.App.--Houston [14th Dist.] 1985,
no writ). Error in the jury charge only requires reversal if, after consideration of the
pleadings, the evidence presented at trial, and the charge in its entirety, the error
amounted to such a denial of a party's rights as was reasonably calculated to, and
probably did, cause rendition of an improper verdict. Island Recreational Development
Corp. v. Republic of Texas Sav. Ass'n, 710 S.W.2d 551, 555 (Tex. 1986).

 Because appellees raised the affirmative defense of release, they had the burden
to establish the existence of a valid release. Vera v. North State Dodge Sales, Inc. 989
S.W.2d 13, 17 (Tex.App.--San Antonio 1998, no pet.). However, a written instrument
reciting a consideration imports one and, to offset that presumption, the party seeking to
assert a lack of consideration must present evidence on that issue. Buddy L. Inc. v.
General Trailer Co., Inc., 672 S.W.2d 541, 547 (Tex.App.--Dallas 1984, writ ref'd n.r.e.). 
We note that both releases with which we are concerned recite on their face that the
release is given "for and in consideration of" either $10 or $10 and the recitals contained
in the document. Further, appellant did not plead a failure of consideration in his third
amended original petition, which was his last live pleading before trial.

 Nevertheless, some evidence as to a lack of consideration was offered at trial, and
assuming arguendo that the admittance of such evidence amounted to a trial of the issue
by consent, the amount of the consideration given for a release needs only to have some
value in the eyes of the law. Id. If the promisee parts with some legal right or sustains
some legal injury as an inducement for the agreement, that will be sufficient. Lassiter v.
Boxwell Bros, Inc., 362 S.W.2d 884, 886 (Tex.Civ.App.--Amarillo 1962, no writ).

 The instrument denominated as Mutual Release Indemnity and Settlement
Agreement between appellant and Davis and Nucorp was a mutual release, i.e., in
exchange for appellant's release of Davis and NuCorp from any claims arising from their
business dealings preceding the date of the agreement, appellant received the same
release from Davis and NuCorp.

 In the other release, appellant released 2100 Memorial Drive, Ltd., Golden Gate,
Davis, and their attorneys, among others, from liability related to appellant's limited
partnership interest in 2100 Memorial Drive, Ltd. The document also recites:

 Releasor has assigned his limited partnership interest in 2100 for
consideration, which assignment has been approved by GOLDEN GATE. 
In conjunction with said assignment the parties hereto execute this Release.


Thus, the release must be viewed within the context of the partnership agreement and the
assignment of appellant's limited partnership agreement to GMC. Furthermore, neither
GMC nor Milano are parties to the release. Because of this, the question is not whether
there was consideration between those parties but is, rather, whether there was
consideration between appellant and Golden Gate, Davis, and the Niehaus appellees for
the release in their favor. The partnership agreement provides that a limited partner may
only assign his interest with the written approval of the general partner and although
approval may not be unreasonably withheld, whether to give approval is within the sole
discretion of the general partner.

 When questioned as to the reason he signed the releases, appellant gave the
following testimony:

 Q. Did you understand by signing this, you were releasing the limited
partnership, Golden Gate, and from liability?


 A. Yes.


 Q. Why did you do this?


 A. He said it was needed in order to close.


 Q. Is that - -


* * *



 Q. You mean Mr. Milano said he needed it?


 A. Yes.


 Q. Did Mr. Milano tell you why he needed to get Mr. Davis released in order
to close?


 A. Well, it's just a normal proceeding, I think. That is when releases are
exchanged.


 Q. At closing?


 A. At closing.


 Q. Was that your - -


 A. So if my wife was not going to be there, I needed to have an executed
instrument here in the States that would be effective or valid for purposes if
needed.


 Q. But it was your understanding that would be only effective at closing, if
there was a closing?


 A. I understood it would only be effective if I got my money back.


 Q: You never got your money?


 A. I wasn't going to release anybody at all unless it was tied to me receiving
money.


This colloquy shows that appellant understood that the releases were a normal part of the
closing transaction, which included the assignment of his interest to GMC, approval of the
sale by the general partner, (2) and the ultimate sale of the partnership property, which was
what appellant desired.

 Appellant had a separate agreement with Milano in which it was stated that
appellant had executed and delivered the bill of sale and releases to Milano in exchange
for Milano using his best efforts to close the sale of the partnership and/or its property to
a third party. If Milano was unable to do so, he would return the documents to appellant.
If Milano did effect such a closing, he was to pay appellant his share of the proceeds from
the sale of the partnership and its assets. As the facts indicate, Milano did bring about the
intended closing, but he failed to pay appellant his share of the proceeds as required by
his contract. Therefore, the evidence as to failure of consideration that was presented at
trial actually relates to the agreement between appellant and Milano, not to the lack of
consideration between the parties to the releases. That being so, with respect to the
releases, lack of consideration was not raised by the trial evidence and no instruction was
necessary in that regard.

 Appellant also complains that by placing the question as to the releases as the first
query to be answered by the jury, it "invites the jury to pour-out the Lemaire's" and
"emphasizes the release defense." However, appellant made no trial objection to the
charge on that basis. It is necessary that a party objecting to a charge must point out
distinctly the objectionable matter and the grounds of the objection. Tex. R. Civ. P. 274. 
A failure to do so waives the objection. Also, an objection that an instruction may confuse
the jury without further explanation is too general to meet the specificity requirement. 
Castleberry v. Branscum, 721 S.W.2d 270, 276-77 (Tex. 1986). Furthermore, the goal of
a jury charge is to submit the issues for their decision logically, simply, clearly, fairly,
correctly, and completely, and the trial court has broad discretion in accomplishing that end
as long as the charge is legally correct. Hyundai Motor Co. v. Rodriquez ex rel Rodriquez,
995 S.W.2d 661, 664 (Tex. 1999). The trial court did not abuse its discretion in refusing
to give a failure of consideration instruction, nor did it abuse its discretion in the order it
presented to the jury questions. Appellant's first issue is overruled.

 In his second issue, appellant complains of the second jury question. In that
question, the jury was asked to determine whether an attorney-client relationship existed
between appellant, individually and not as a limited partner, and the Niehaus appellees
with respect to the operations of the limited partnership. Appellant argues the instruction
contains contradictory and confusing definitions of an attorney-client relationship.

 The instruction in question reads:

 An attorney-client relationship exists if the attorney has agreed, expressly or
impliedly, to render legal services of a specified or general nature to the
person claiming such relationship.


 All that is required to create an attorney-client relationship is that the parties,
expressly or implicitly by their conduct manifest an intention to create the
attorney-client relationship.

 

Specifically, appellant argues that the first part of the instruction requires an agreement by
an attorney to provide legal services. However, he continues, the second part of the
instruction is broader and requires explicit or implicit conduct that is determined by the
conduct of both parties. Because there is no explanation as to how these two allegedly
different standards relate to one another and whether one or both standards must be met,
he posits the instructions are confusing. Furthermore, he contends, the instructions fail to
tell the jury of the attorney's duty to tell a client that he is not representing him under the
facts of the case. Further, he posits, because the jury had already answered the first
question affirmatively, the confusion of the second question was exacerbated because it
suggested to the jury, without explanation, that their answer to the first question was not
dispositive.

 The attorney-client relationship question between appellant and the Niehaus
appellees arose because he claimed that at the time of the preparation and execution of
the limited partnership agreement, which occurred over a three-hour period, he believed
the Niehaus appellees were representing him. In that connection, appellant testified that
in the past, the Niehaus appellees had represented him in some legal matters (3) and, prior
to executing the limited partnership agreement, he inquired whether he needed his own
attorney and was told by Ron Niehaus that he did not need one. However, Niehaus also
told appellant that he represented the limited partnership, although he did not explain to
appellant that he did not represent him individually. Later, the Niehaus appellees also
prepared the closing documents for the sale of the partnership interest and property. 
Appellant sued the Niehaus appellees for malpractice and breach of fiduciary duty.

 The law is well-settled that an attorney-client relationship is a contractual
relationship in which an attorney agrees to render professional services for a client, and
the relationship may be established either expressly or impliedly from the conduct of the
parties. Mellon Service Co. v. Touche Ross & Co., 17 S.W.3d 432, 437 (Tex.App.--Houston [1st Dist.] 2000, no pet.); Vinson & Elkins v. Moran, 946 S.W.2d 381, 405
(Tex.App.--Houston [14th Dist.] 1997, writ dism'd by agr.); and Byrd v. Woodruff, 891
S.W.2d 689, 700 (Tex.App.--Dallas 1994, writ dism'd by agr.). The instructions given by
the trial court substantially track this language. We disagree that the instructions as
submitted gave the jury two different standards. The first instruction defines the
relationship, and the second instruction states how the existence of such a relationship is
to be determined. Although the contractual relationship exists if the attorney agrees to
render professional services, the existence of that relationship is to be determined by the
express or implied conduct of both parties. Stated differently, the attorney-client
relationship does not exist merely because one party subjectively believes the other has
agreed to render legal services. See Moran, 946 S.W.2d at 406. (4)

 Appellant also argues error in that the question failed to instruct the jury of the duty
to inform a client that the attorney was not representing him under the facts of this case. 
He further complains of the placement of the question after question no. 1. However,
again, appellant failed to make those specific objections at trial. By failing to so do, he has
waived those complaints on appeal. See Murphy v. Seabarge, Ltd., 868 S.W.2d 929, 935
(Tex.App.--Houston [14th Dist.] 1994, writ denied). Appellant's second issue is overruled.

 In his third issue, appellant contends the trial court erred in failing to submit an
attorney-client privity question to the jury regarding the Niehaus appellees and the limited
partnership. Because his claims were brought both in his individual capacity and on behalf
of the limited partnership, he argues question no. 2 should have contained an inquiry as
to the attorney-client relationship based on his derivative action. However, appellant did
not make this complaint during the charge conference and he has, therefore, waived it. 
Appellant's third issue is overruled.

 In his fourth and final issue, appellant complains of the trial court's denial of his
claim against the Thorne appellees seeking imposition of a constructive trust. He bases
this complaint on the fact that the Thorne appellees received funds belonging to appellant,
which they placed in their trust account and refused to release to him, even after receiving
notice that appellant claimed he was entitled to them. Appellant contends he was entitled
to the imposition of a constructive trust as a matter of law, but cites no authority in support
of that claim. Without argument and citation of authorities, an appellant waives his issue. 
Seymour v. American Engine & Grinding Co., 956 S.W.2d 49, 61 (Tex.App.--Houston [14th
Dist.] 1996, writ denied); Howell v. Murray Mortgage Co., 890 S.W.2d 78, 81 (Tex.App--Amarillo 1994, writ denied). Moreover, in granting judgment in favor of the Thorne
appellees, the court opined:

 The law review article and the case as cited in the Baylor Law Review article
by Mr. DeShazo are distinguishable in that they rely on the statutory lien, the
workers' comp, or some other kind of statutory or some other kind of a lien
relationship. I am unable to find that anything like that kind of relationship
exists in this court.


 Furthermore, I find that Mr. Thorne was simply disbursing funds from his trust
account as directed by his client as he was legally obligated to do. Therefore
I render judgment in favor of Defendant Thorne and Thorne & Thorne - -


* * *



 -that they take nothing from the plaintiff on the theory of constructive trust,
which was the only theory you still had against them . . . .


 A constructive trust is an equitable remedy imposed to prevent unjust enrichment. 
Meadows v. Bierschwale, 516 S.W.2d 125, 131 (Tex. 1974). The imposition of a
constructive trust is within the discretion of the trial court. Carr v. Weiss, 984 S.W.2d 753,
767 (Tex.App.--Amarillo 1999, pet. denied); Hoggett v. Brown, 971 S.W.2d 472, 494 (Tex.
App.--Houston [14th Dist.] 1997, pet. denied). There was no evidence that the Thorne
appellees were unjustly enriched and the evidence supports the finding of the trial court. 
Thus, the trial court did not abuse its discretion in refusing to impose a constructive trust. 
Appellant's fourth issue is overruled.

 In summary, all of appellant's issues are overruled and the judgment of the trial
court is affirmed. 


 John T. Boyd

 Chief Justice

Publish.

1. The claims of Barbara Lemaire were non-suited during the trial, as were some of
the claims against several of the other defendants. Defendant Romeo James Milano did
not appear at trial.
2. There is no written approval of the assignment from appellant to GMC in the record
and there is some evidence that one did not exist. However, by virtue of the fact that the
interest of GMC was assigned to Golden Gate at the closing and Golden Gate then sold
the partnership property, Golden Gate can be said to have impliedly given consent.
3. The testimony showed that the Niehaus appellees had also previously represented
Davis in legal matters. 
4. In Moran, the appellant complained of error in the charge because the court failed
to instruct the jury that "agreed" meant a meeting of the minds which must be determined
from the objective manifestations made by one party to another and not by the subjective
intent of any one party. The court held the trial court abused its discretion by failing to give
that instruction, but the error did not require reversal. Id. That particular complaint is not
before us in this appeal.